101 F.3d 681
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Arthur PRESTON and Tony Jerome Barr, Defendants-Appellants.
 Nos. 93-1095, 93-1096, 95-2329.
 United States Court of Appeals, Second Circuit.
 April 1, 1996.
 
 APPEARING FOR APPELLEE: John H. Durham, Assistant U.S. Attorney, Bridgeport, CT
 APPEARING FOR BARR: Darrell B. Fields, New York, NY
 Before CARDAMONE, WALKER and McLAUGHLIN, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the District of Connecticut and was argued by counsel.[1]
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.
 
 
 3
 On July 26, 1991, an undercover law enforcement officer met with defendant Anthony Preston in Preston's apartment in Bridgeport, Connecticut to complete a purchase of five kilograms of cocaine. Prior to the officer's arrival, Preston was seen entering the apartment by other law enforcement along with appellant Tony Jerome Barr and Samuel McAllister. When the undercover officer arrived at the apartment, he asked if Preston was alone. Although Preston assured him that they were the only two persons present, the officer discovered Barr in Preston's bedroom with a loaded MAC 11 nine millimeter semi-automatic pistol. Preston told the officer that Barr was acting only as security for the deal and Barr then showed the officer a sample from one of the packages of cocaine.
 
 
 4
 After viewing the cocaine, the officer and Preston went outside to check the officer's money. As soon as the two were out of view of Preston's apartment, the officer placed Preston under arrest. At about the same time, McAllister was seen leaving the building and he too was stopped by law enforcement officers as he crossed the street.
 
 
 5
 Shortly thereafter, Barr looked out of the bathroom window and saw law enforcement personnel gathering. He then laid down his weapon and fled out a back door of Preston's apartment. He forced open the rear door of the second-floor apartment, which was then occupied by a woman and several small children. Barr offered to pay the woman to hide him in the apartment and instructed her not to answer when police knocked on the door. However, law enforcement personnel managed to gain entry into the apartment and rescue the woman and children. After Barr was arrested, he admitted to his presence at the drug transaction in Preston's apartment, but claimed that he was working as an informant for Sergeant Louis Piccirillo of the Bridgeport Police Department.
 
 
 6
 Twice prior to trial, Barr indicated his interest in cooperating with the prosecution. At both sessions, he and his attorney read and signed a written proffer agreement that stated, among other things, that if Barr became a witness at a trial his statements during the proffer sessions could be used against him if they were materially different from his testimony at trial. During the first proffer session, on February 4, 1992, Barr maintained that he had been acting as an informant to Sergeant Piccirillo during the transaction. Because the government did not believe Barr's story, the proffer session was terminated.
 
 
 7
 At the second proffer session, on June 11, 1992, Barr admitted that he had not been acting as an informant during the July 26 drug transaction, but maintained that he had intended to inform police of a second drug deal that was to have taken place on July 29, 1991. He also informed the police that McAllister had been a participant in the July 26 drug transaction. But because Barr was unwilling to testify against McAllister, the government refused to enter into a cooperation agreement with him.
 
 
 8
 At trial, the government produced testimony to show that Barr had been present at the July 26 drug transaction. Barr's defense counsel called Barr to the stand. Barr testified that he had been contacted on July 24, 1991 by Piccirillo to get involved in and inform on a drug transaction that Preston was involved in. Barr then allegedly contacted Preston and arranged to act as security for the transaction. Barr claimed that he and his girlfriend attempted to contact Piccirillo several times on July 25 and 26, but got no response.
 
 
 9
 Barr also explained that the undercover officer and Preston had begun arguing about the transaction and that he had mediated their dispute. When the two of them left the apartment but did not come back, he assumed that the transaction was not going forward, so he put the gun down and started to go outside. However, upon descending the stairs, he saw the undercover officer pointing a gun at him, so he went back upstairs and entered the second-floor apartment. He claimed that he wished to phone the police, but that the apartment did not have a phone.
 
 
 10
 Barr's counsel did not question him about his statements at the proffer sessions. However, he did ask him about a 1986 conviction for carrying a gun, as well as three convictions in 1988 for second degree robbery, possession of cocaine and assault. On cross-examination, the government, over Barr's counsel's objection, questioned him about the proffer sessions.
 
 
 11
 During Barr's testimony, Barr's counsel also made several objections that the people at the government's table were acting unprofessionally by smiling and laughing. The district court acknowledged the conduct, and warned government counsel to cease all such actions. Similar conduct also occurred during Barr's counsel's summation to the jury, and the district court again acknowledged that it had occurred.
 
 
 12
 On rebuttal, Sergeant Piccirillo was called and testified that, although Barr had worked for him previously, Barr had not been acting as an informant on July 26. Piccirillo testified that he had met with Barr several days prior to the transaction, but only to seek Barr's assistance in locating a fugitive.
 
 
 13
 The jury convicted Barr on all three counts in which he was charged: first, conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; second, possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); and, third, using and carrying a firearm in connection with a drug offense, in violation of 18 U.S.C. § 924(c)(1). The district court sentenced Barr to two concurrent terms of 210 months imprisonment on the first and second counts, and a consecutive term of sixty months imprisonment on the weapon count. Barr filed a notice of appeal, but was permitted to withdraw his appeal in order to litigate his claim of ineffective assistance of counsel, pursuant to 28 U.S.C. § 2255. After the district court denied his § 2255 motion, Barr reinstated his original appeal and filed a timely notice of appeal from the denial of the motion. We consolidated his appeals.
 
 
 14
 On appeal, Barr first argues that his trial counsel was ineffective in two respects: first, that his attorney should have realized that Barr could be impeached based on his statements made at the proffer session and, second, that counsel should have litigated the admissibility of Barr's prior criminal record. Neither claim has merit.
 
 
 15
 To prevail on a claim of ineffective assistance of counsel, Barr must show both that his counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for the deficiencies of his counsel, the result would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). As the district court found in its ruling on the motion, Barr has not shown that he was unconstitutionally prejudiced. The government presented very strong evidence that Barr was a participant in the July 26 drug transaction. Barr's only conceivable defense was that he was an informant, and the only practical way for him to convince the jury of this was to testify. Although Barr's counsel probably should have brought out his inconsistent statements during the proffer sessions on direct examination, we cannot say that the failure to do so unduly prejudiced Barr. Similarly, given his informant defense, the evidence of Barr's previous criminal convictions was almost certain to come in, so we cannot say that Barr's counsel's failure to contest this evidence was deficient.
 
 
 16
 Barr's second argument is that the prosecutor's misconduct deprived him of a fair trial. To prevail on this claim, Barr must show that it caused him substantial prejudice. United States v. LaMorte, 950 F.2d 80, 83 (2d Cir.1991), cert. denied, 504 U.S. 909 (1992). Although this determination is contextual, it "is largely controlled by three factors: (1) the severity of the misconduct; (2) curative measures taken by the district court; and (3) the certainty of conviction absent the misconduct." Id. We have no difficulty in finding that the conduct by the prosecutor and others at the government's table was improper and highly unprofessional. Actions that have the effect of indicating to the jury that the government finds the defendant's testimony to be incredible are plainly beyond the bounds of fair advocacy. Nonetheless, we do not think that reversal is warranted here. First, the incidents of misconduct, although improper, were not so repeated as to constitute severe misconduct. Second, the district court, in its charge, instructed the jury to disregard the conduct of counsel. Finally, the evidence that Barr was not acting as an informant, including Piccirillo's testimony and Barr's own actions, was simply overwhelming. We cannot conclude that Barr was substantially prejudiced.
 
 
 17
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 We previously affirmed the judgment as to Anthony Preston. See United States v. Preston, No. 93-1095 (2d Cir. Oct. 1, 1993)